# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**210**
**CA 11-01309**
PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, LINDLEY, AND MARTOCHE, JJ.

---

IN THE MATTER OF ERIC J. KOCH, D.O.,
PETITIONER-RESPONDENT,

                          V                              OPINION AND ORDER

JAMES G. SHEEHAN, NEW YORK STATE MEDICAID
INSPECTOR GENERAL, RESPONDENT-APPELLANT.

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (VICTOR PALADINO OF COUNSEL), FOR RESPONDENT-APPELLANT.

BROWN & TARANTINO, LLC, BUFFALO (SUSAN A. EBERLE OF COUNSEL), FOR PETITIONER-RESPONDENT.

-----------------------------------------------------------------------------------------

Appeal from a judgment (denominated order and judgment) of the Supreme Court, Erie County (Diane Y. Devlin, J.), entered August 24, 2010 in a proceeding pursuant to CPLR article 78.  The judgment granted the petition.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.

Opinion by MARTOCHE, J.:  Respondent, the New York State Medicaid Inspector General, appeals from a judgment granting the CPLR article 78 petition, thereby vacating respondent's determination excluding petitioner from participating in the New York State Medicaid Program and reinstating petitioner retroactively to March 10, 2010 as a participating physician in the Medicaid Program.  We are called upon to consider for the first time the scope of the authority of the Office of the Medicaid Inspector General (OMIG) insofar as it relates to physician conduct not involving Medicaid patients.

### OMIG

The Department of Health (DOH) is the state agency responsible for administering the state's Medicaid Program (*see* Social Services Law § 363-a; 18 NYCRR 504.1 [d] [12]).  Within the DOH, the OMIG was established in 2006 as an independent entity responsible for detecting and preventing fraud, waste, and abuse in the Medicaid Program (Public Health Law §§ 30, 30-a, 31, 32).  Among other things, respondent is authorized to exclude enrolled health care providers from the Medicaid Program (*see* § 32 [6]), and to "perform any other functions that are necessary or appropriate to fulfill the duties and responsibilities of the office in accordance with federal and state law" (§ 32 [24]).

In order to provide medical care, services, and supplies to Medicaid recipients and to receive Medicaid reimbursement, a person must enroll as a provider in the Medicaid Program (*see* 18 NYCRR 504.1 [b] [1]).  The relationship between the DOH and the provider is an at-will contractual relationship, and there is no inherent entitlement to being a Medicaid provider (*see Matter of Bora v New York State Dept. of Social Servs*., 152 AD2d 10, 12-13).

The federal Medicaid regulations permit the Office of the Inspector General to exclude a Medicaid provider who furnishes substandard services to patients, whether or not they are Medicaid patients (*see* 42 CFR 1001.701 [a] [2]), and further require that the state agency have the same authority to do so (*see* 42 CFR 1002.210). The DOH regulations provide several bases for terminating or excluding a provider from the Medicaid Program.  Indeed, pursuant to 18 NYCRR 504.7 (a), the provider's participation may be terminated by the DOH on 30 days' notice without cause.  In certain circumstances, termination is mandatory, such as when the provider is excluded or terminated from participating in the federal Medicare program (*see* 18 NYCRR 515.8 [a] [1]), or when the provider's license is terminated, revoked or suspended (*see* 18 NYCRR 504.7 [d] [1]).  In addition, the OMIG has the authority to exclude a provider for "unacceptable practices" within the meaning of 18 NYCRR 515.2.  Such "unacceptable practices" include, among other things, the failure to meet professionally recognized standards for health care (*see* 18 NYCRR 515.2 [b] [12]).

The regulations authorize the DOH to exclude a provider found to have committed professional misconduct, as follows:

> "Upon receiving notice that a person has been found to have violated a State or Federal statute or regulation pursuant to a final decision or determination of an agency having the power to conduct the proceeding and after an adjudicatory proceeding has been conducted, in which no appeal is pending, or after resolution of the proceeding by stipulation or agreement, and where the violation resulting in the final decision or determination would constitute an act described as professional misconduct or unprofessional conduct by the rules or regulations of the State Commissioner of Education or the State Board of Regents, or an unacceptable practice under this Part, or a violation of article 33 of the Public Health Law, the department may immediately sanction the person and any affiliate" (18 NYCRR 515.7 [e]).

The OMIG regularly receives, for its review, copies of consent agreements and orders from the Office of Professional Medical Conduct (OPMC).  The Board of Professional Medical Conduct and the OPMC

(collectively, OPMC) serve, respectively, as the investigatory and adjudicatory arms of the DOH concerning allegations of professional misconduct by physicians (*see* Public Health Law § 230 *et seq.*; Education Law § 6530).  In the event that the OPMC enters into a consent agreement and order (Consent Order), the OMIG's Exclusions Unit reviews such Consent Orders to determine whether the provider should be allowed to continue as a Medicaid provider or should be excluded from the Medicaid Program.

### The DOH Proceeding against Petitioner

Petitioner has been licensed to practice medicine in New York State since 2003, and has specialized in the field of internal medicine.  The OPMC investigated petitioner's involvement in the care of two patients who were not receiving Medicaid, and ultimately filed a statement of charges alleging that petitioner failed to meet accepted standards of care in nine respects with regard to the two patients.  Thus, petitioner was charged with committing misconduct under Education Law § 6530 (3), erroneously referred to by the DOH in its Specifications of Charges as section 6230 (3).  Negotiations ensued, and petitioner entered into a Consent Order.  According to the terms of the Consent Order, petitioner was pleading "no contest to the specifications, in full satisfaction of the charges" against him in exchange for an agreement to a specified penalty.  He agreed to be placed on probation for a period of 36 months and to comply with various conditions.  He further agreed that his failure to comply with any conditions of the Consent Order would constitute misconduct under Education Law § 6530 (29).  The Consent Order further provided that, if the OPMC did not adopt the Consent Order, none of the terms of the Consent Order would bind petitioner "or constitute an admission of any of the acts of alleged misconduct."  The OPMC adopted the Consent Order effective June 9, 2009.

### The CPLR Article 78 Proceeding

On March 4, 2010, the OMIG issued a notice of immediate agency action, excluding petitioner as a provider from the Medicaid Program and placing him on the "OMIG list of persons disqualified from Medicaid."  According to the affidavit of a registered nurse in the OMIG, the Exclusions Unit regularly reviews penalties imposed by OPMC against health care providers over whom OPMC has jurisdiction.  The nurse averred that she reviews OPMC consent orders and the associated charges, "to determine if the conduct of the individual that led to the imposition of a penalty by OPMC rises to the level that would warrant the individual's exclusion as a provider in the Medicaid Program."  She reviewed the Consent Order at issue here and stated that "[a]mong the findings" in the Consent Order were those involving the two patients and, based on OPMC's findings, she "believed" that petitioner's conduct was so negligent that the OMIG should exercise its discretion under 18 NYCRR 515.7 (e) and exclude petitioner from participating as a provider in the Medicaid Program.  She made that recommendation to the Exclusions Unit, which adopted her recommendation.  The exclusion became effective on March 10, 2010.  Petitioner submitted a response to the termination dated July 1, 2010

and argued that the sanction was unreasonable and that he should be reinstated immediately as a participant in the Medicaid Program. By letter dated July 28, 2010, OMIG rejected as untimely what it deemed to be an appeal of its decision. In the interim, however, petitioner commenced this CPLR article 78 proceeding on July 9, 2010, contending that the OMIG's determination was arbitrary and capricious and that the penalty imposed shocked one's sense of fairness. We deem it important to address petitioner's apparent failure effectively to exhaust his administrative remedies, inasmuch as his administrative appeal was dismissed as untimely and it does not appear that he challenged that dismissal. It is seemingly inevitable that petitioner's administrative appeal would have been denied on the merits even in the event that it had been timely submitted given respondent's avid opposition to this CPLR article 78 proceeding. As we noted in *Matter of Caso v New York State Pub. High School Athletic Assn.* (78 AD2d 41, 45-46), "[t]he Court of Appeals has held . . . that the exhaustion rule is not inflexible and need not be followed when[, inter alia,] . . . resort to an administrative remedy would be futile" (*see generally* Siegel, NY Prac § 560, at 966 [4th ed]). In addition, it does not appear on the record before us that respondent has ever raised any issue concerning petitioner's failure to exhaust his administrative remedies, thus casting a shadow of doubt on the merits of respondent's dismissal of the administrative appeal, which has never been litigated. We thus shall consider the merits of the CPLR article 78 proceeding.

In a supporting affidavit, petitioner averred that, since being excluded from the Medicaid Program, he has "been unable to completely fulfill [his] duties as both [his] internist and hospitalist practices with respect to [his] patients who are Medicaid patients." In addition, he averred that the decision to exclude him from Medicaid benefits was causing immediate harm to his patients and his career and could "substantially impact [his] ability to earn an income now and into the future." Respondent submitted a verified answer asserting that the determination was not arbitrary and capricious. Supreme Court granted the petition without writing and ordered petitioner retroactively reinstated to the Medicaid Program as a participating physician.

## Discussion

Respondent contends that the OMIG's determination excluding petitioner from the Medicaid Program is not arbitrary and capricious or unlawful. Specifically, respondent contends that the OMIG has the authority to exclude petitioner from the Medicaid Program pursuant to 18 NYCRR 515.7 (e) based on the Consent Order in which petitioner did not contest having committed misconduct by practicing medicine with negligence in the treatment of two elderly emergency room patients. According to respondent, the OMIG has a duty to ensure that quality care is provided to Medicaid patients, even though petitioner pleaded no contest to the charges and the charges did not involve Medicaid patients. Respondent views the authority of the OMIG broadly and cites in support of its position various New York State Supreme Court decisions involving similar circumstances (*see e.g. Matter of Blab v*

*Sheehan*, Sup Ct, Albany County, Sept. 30, 2010, Sackett, J., index No. 4275-10; *Matter of Halliday v State of New York Off. of Medicaid Inspector Gen.*, Sup Ct, Albany County, July 2, 2010, Connolly, A.J., index No. 2575-10).  Addressing *Halliday* first, we note that the court stated that the petitioner was charged by OPMC with charges of, inter alia, "negligence, which constituted acts of professional misconduct under the Education Law," and that there was no dispute that the petitioner entered into a settlement agreement with OPMC in which the petitioner pleaded no contest to at least one of the specifications alleging negligence.  The court then extrapolated therefrom that, because Education Law § 6530 (3) provides that "practicing the profession with negligence on more than one occasion" constitutes "professional misconduct," the OMIG had the authority to exclude the petitioner from the Medicaid Program.  Similarly, the court in *Blab*, relying on *Halliday*, concluded that the Consent Agreement and Order under which the petitioner pleaded no contest to two of the specifications therein gave the OMIG authority under 18 NYCRR 515.7 (e), incorrectly cited by the court in *Blab* as 517.7 (e), to exclude the petitioner from participation as a provider in the Medicaid Program.

On the other hand, in *Matter of Mihailescu v Sheehan* (25 Misc 3d 258), Supreme Court (Figueroa, J.) reached a contrary result under similar facts.  There, the petitioner executed a Consent Agreement waiving her right to contest OPMC's formal charges and agreed to a 12-month suspension of her medical license.  Because the petitioner's license was suspended, the OMIG automatically terminated the petitioner from participation as a Medicaid provider pursuant to 18 NYCRR 504.7 (d) (1).  The petitioner's license subsequently was reactivated, but the OMIG denied her application for reinstatement to the Medicaid Program.  The court in *Mihailescu* concluded that the OMIG's refusal to reinstate the petitioner was arbitrary and capricious, relying in part on the fact that the OMIG did not investigate or independently evaluate the petitioner, but instead automatically denied the petitioner's application for reinstatement based on the content of the Consent Agreement.  The court concluded that, because the DOH was satisfied that after the 12-month penalty the petitioner could be safely returned to hospital employment under stipulated conditions, the OMIG's "perfunctory refusal" to reinstate the petitioner was baseless (*id.* at 266).

Likewise, in *Napoli v Sheehan* (Sup Ct, Erie County, May 25, 2010, Drury, J., index No. I2009-14524), the petitioner entered into a Consent Agreement in which the petitioner did not contest one specification of committing professional misconduct pursuant to Education Law § 6530 (3).  The penalty to which the petitioner agreed in the Consent Agreement subjected him to censure and reprimand, completion of a continuing education program, and a single review of his medical and office records.  The penalty allowed the petitioner to continue in his professional practice, provided that he fulfilled the conditions of the Consent Agreement, as is the case here.  The OMIG reviewed the Consent Agreement and notified the petitioner that he was being excluded from the Medicaid Program.  The court held that the "real issue" was that the petitioner would not have entered into the

Consent Agreement not to contest the charges of professional misconduct if the petitioner was not to be permitted to carry on with the practice of medicine.  The court thus wrote that the admission of no contest to the charges and the agreed on sanction "must be considered together and the admission alone should not be used as a basis to deny the petitioner his ability to practice medicine."  The court concluded that the respondent's determination to exclude the petitioner from the Medicaid Program based solely on his decision not to contest a charge of professional misconduct, without any independent review of the underlying facts and a disregard of OPMC's related sanctions that would allow the petitioner to continue practicing medicine, was without a rational basis and was arbitrary and capricious.

We conclude that the analysis of those courts that have invalidated the OMIG's determination excluding physicians from the Medicaid Program based on Consent Agreements with OPMC are persuasive, and we therefore adopt a similar analysis here.

Where, as here, a petition does not raise a substantial evidence issue, a court's inquiry is "limited to whether denial of petitioner's application was arbitrary, capricious or affected by an error of law" (*Matter of Senior Care Servs., Inc. v New York State Dept. of Health*, 46 AD3d 962, 965; *see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231-232).  Further, a court "may not substitute its judgment for that of the [agency] where . . . the determination is neither irrational nor arbitrary and capricious" (*Matter of Sacandaga Park Civic Assn. v Zoning Bd. of Appeals of Town of Northhampton*, 296 AD2d 807, 809).  It is also axiomatic that administrative agencies are to be afforded great deference with regard to the construction given statutes and regulations by the agency responsible for their administration, provided that such construction is not irrational or unreasonable (*see Matter of Howard v Wyman*, 28 NY2d 434, 435, *rearg denied* 29 NY2d 749).

Applying those standards, we conclude that the OMIG's determination was arbitrary and capricious.  The initial charges of negligence were investigated by the OPMC, the appropriate arm of the DOH, and ultimately petitioner agreed to plead no contest to the specifications in full satisfaction of the charges against him.  The penalty imposed did not include any suspension, but rather was akin to censure or reprimand with conditions.  To adopt respondent's view would create an irrational result that would allow petitioner to continue to treat non-Medicaid patients, but be prohibited from treating Medicaid patients.  Additionally, as the court noted in *Napoli*, it seems unlikely that petitioner would have agreed to the Consent Order had he known that he effectively would not be allowed to continue to practice medicine, because the charges to which he pleaded no contest would be used against him factually to exclude him from the Medicaid Program.  We adopt the reasoning of Supreme Court in *Mihailescu* (25 Misc 3d 258), as follows:

"The instant proceeding illustrates the

point. Here, the Department of Health, through OPMC and the Board, was indisputably responsible for protecting non-Medicaid and Medicaid patients alike by determining whether their health and safety could be entrusted to petitioner's care, and, if so, on what terms. Given the obvious importance of avoiding duplicative departmental work and potentially inconsistent intra-departmental results, the [L]egislature did not likely intend that the [OMIG] in such a case might second-guess the Department by also investigating or evaluating whether the physician in question would present a potential danger to a subset of the patient population, i.e., Medicaid recipients. The [OMIG] was likelier meant instead to defer to the conclusions of his [or her] sister departmental units in such regard . . . *To be sure, the agreement contained petitioner's concession that she would not contest the two charges against her. But it also in effect contained, as noted above, the Department's conclusion that, after the 12-month penalty, she could safely be returned to hospital employment under the stipulated conditions. In the face of such acknowledgment by departmental staff who had directly and at length been involved in the review of petitioner's case, the [OMIG]'s perfunctory refusal to reinstate petitioner—thus hampering her return to such employment—was baseless. In other words, it was arbitrary and capricious*" (*id.* at 266 [emphasis added]).

As in *Mihailescu* and *Napoli*, there is no indication in the record that the OMIG investigated or independently evaluated petitioner, but instead it simply excluded him from the Medicaid Program based upon the Consent Order. Accordingly, under the circumstances presented here, we conclude that the determination was arbitrary and capricious and that the judgment should be affirmed. In light of our conclusion, there is no need to address petitioner's contention that the penalty was so disproportionate to the offense as to shock one's sense of fairness.

Entered:  March 23, 2012                    Frances E. Cafarell
                                            Clerk of the Court