[998 NE2d 804, 976 NYS2d 4]

In the Matter of ERIC J. KOCH, D.O., Respondent, v JAMES G. SHEEHAN, New York State Medicaid Inspector General, Appellant.

Argued September 9, 2013; decided October 22, 2013

## POINTS OF COUNSEL

*Eric T. Schneiderman, Attorney General*, Albany (*Victor Paladino, Barbara D. Underwood* and *Andrew D. Bing* of counsel), for appellant. I. The Office of the Medicaid Inspector General acted rationally and within its authority in excluding petitioner, a physician, from the Medicaid program based on a Board for Professional Medical Conduct consent order that allows him to continue to practice medicine. (*Vaynshelbaum v Daines*, 30 Misc 3d 1227[A], 2011 NY Slip Op 50220[U]; *Matter of Mihailescu v Sheehan*, 25 Misc 3d 258; *Matter of Liguori v Beloten*, 76 AD3d 1156, 16 NY3d 702; *Matter of Pekarsky v Commissioner of N.Y. State Dept. of Social Servs.*, 257 AD2d 905; *Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581.) II. The Office of the Medicaid Inspector General was not required to conduct an independent investigation before excluding a provider from the Medicaid program under 18 NYCRR 515.7 (e). (*Matter of Liguori v Beloten*, 76 AD3d 1156, 16 NY3d 702.)

*Brown & Tarantino, LLC*, Buffalo (*Susan A. Eberle* of counsel), for respondent. I. The Appellate Division properly determined that appellant Office of the Medicaid Inspector General's exclusion of respondent physician from the Medicaid program was arbitrary and capricious. (*Matter of Mihailescu v Sheehan*, 25 Misc 3d 258; *Vaynshelbaum v Daines*, 30 Misc 3d 1227[A], 2011 NY Slip Op 50220[U].) II. The Appellate Division properly determined that appellant Office of the Medicaid Inspector General did not have a proper basis for exclusion of respondent physician from the Medicaid program pursuant to 18 NYCRR 515.7 (e). (*People v Daiboch*, 265 NY 125; *Buechel v Bain*, 97 NY2d 295; *Ross v Medical Liab. Mut. Ins. Co.*, 75 NY2d 825.) III. Appellant Office of the Medicaid Inspector General's exclusion of respondent physician from the Medicaid program constitutes an abuse of discretion. (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Liguori v Beloten*, 76 AD3d 1156.)

*Kern Augustine Conroy & Schoppmann, P.C.*, Westbury (*Donald R. Moy* of counsel), for Medical Society for the State of New York, amicus curiae. I. The determination of the Office of the Medicaid Inspector General is irrational, arbitrary and capricious because it would result in a petitioner being penalized and

disciplined a second time without any independent investigation after New York State Department of Health, through the Board for Professional Medical Conduct and Office of Professional Medical Conduct, provided assurance that the consent agreement and order would "resolve this matter." (*Matter of New York State Health Facilities Assn., Inc. v Sheehan*, 100 AD3d 1086; *Matter of Mihailescu v Sheehan*, 25 Misc 3d 258.) II. The Appellate Division correctly held that the Office of the Medicaid Inspector General's determination excluding petitioner from the Medicaid program was arbitrary and capricious. (*Matter of Mihailescu v Sheehan*, 25 Misc 3d 258; *Vaynshelbaum v Daines*, 30 Misc 3d 1227.)

### OPINION OF THE COURT

READ, J.

We hold that the Office of the Medicaid Inspector General (OMIG or the agency) is authorized to remove a physician from New York's medical assistance (Medicaid) program in reliance solely on a consent order between the physician and the Board for Professional Medical Conduct (BPMC), regardless of whether BPMC chooses to suspend the physician's license or OMIG conducts an independent investigation (*see* 18 NYCRR 515.7 [e]). OMIG has a responsibility to insure that scarce Medicaid dollars are spent on quality medical care for Medicaid recipients, who are often unable to vote with their feet. The agency may therefore properly decide that when the government is paying for the medical care of disadvantaged citizens, providers must possess more than the minimum level of competence necessary to avoid license suspension (*see generally Matter of Medicon Diagnostic Labs. v Perales*, 74 NY2d 539, 545 [1989] ["the agency charged with the responsibility of administering the medicaid program has inherent authority to protect the quality and value of services rendered by providers in that program"]). Indeed, federal law requires, as a condition of receipt of federal funding, that states institute administrative procedures enabling them to exclude Medicaid providers for furnishing substandard services, regardless of whether those services were supplied to Medicaid recipients (*see* 42 CFR 1002.210, 1001.701 [a] [2]).

In this litigation, Supreme Court annulled OMIG's determination to terminate petitioner physician's participation in the Medicaid program on the basis of a BPMC consent order, and directed his reinstatement. In the consent order, petitioner physician pleaded no contest to charges of professional misconduct

and agreed to 36 months' probation. Upon OMIG's appeal, the Appellate Division affirmed, holding that it was arbitrary and capricious for the agency to bar petitioner physician from treating Medicaid patients when BPMC permitted him to continue to practice; and that OMIG was required to conduct an independent investigation before excluding a physician from Medicaid on the basis of a BPMC consent order (*see* 95 AD3d 82 [4th Dept 2012]). We subsequently granted OMIG permission to appeal (19 NY3d 813 [2012]).

We disagree with the Appellate Division's rationale, but affirm because OMIG's determination was arbitrary and capricious for another reason. Specifically, OMIG did not explain why the BPMC consent order in this case caused it to exercise its discretion pursuant to 18 NYCRR 515.7 (e) to exclude petitioner physician from the Medicaid program.

## I.

The Office of Professional Medical Conduct (OPMC) comprises an investigatory arm (also called the Office of Professional Medical Conduct) and an adjudicatory arm, the BPMC. OPMC is the authority within the Department of Health (DOH) charged with investigating complaints of physician misconduct, and BPMC imposes sanctions if misconduct is found to have occurred. Frequently, BPMC will enter into a consent order with the physician under investigation, as happened here. OMIG, also housed within DOH, is responsible for policing New York's Medicaid program. The legislature consolidated the powers of several extant state entities into one unit when it created OMIG in 2006 and placed it under the umbrella of DOH.

OPMC sends the results of its investigations, including consent orders, to OMIG, which then determines whether the physician in question should be terminated from participating in the Medicaid program. Sometimes, as in this case, OMIG removes the physician from the program even though the sanctions imposed by BPMC do not include license suspension. Petitioner physician questions the wisdom of this "collateral consequence" of a BPMC consent order, and argues that OMIG must defer to BPMC. But the applicable statutes and regulations authorize OMIG to exclude a physician from the Medicaid program regardless of the nature of the sanctions directed by BPMC.

When it established OMIG, the legislature enacted an extensive list of its functions and duties, including responsibility to

"pursue civil and administrative enforcement actions against any individual or entity that engages in fraud, abuse, or *illegal or improper acts* or unacceptable practices perpetrated within the medical assistance program, including but not limited to . . . (c) imposition of administrative sanctions and penalties in accordance with state and federal laws and regulations . . . . In the pursuit of such civil and administrative enforcement actions under this subdivision, the inspector shall consider *the quality and availability of medical care and services and the best interest of both the medical assistance program and recipients*" (Public Health Law § 32 [6] [emphases added]).

And long before OMIG's creation, the Department of Social Services, which was responsible for overseeing Medicaid prior to 1996 when this function was transferred to DOH, promulgated numerous regulations governing participation in and removal from the Medicaid program (*see e.g.* 18 NYCRR parts 504, 515). These Medicaid regulations empowered the successive responsible governmental entities to sanction and exclude medical professionals from the program (*see e.g.* 18 NYCRR 515.3 [a]). As relevant here, "the department" (meaning, in the current context, OMIG) is authorized to take "immediate action" to impose sanctions in certain circumstances "upon notice to the person" (18 NYCRR 515.7 [a]); specifically,

"[u]pon receiving notice that a person has been found to have violated a State or Federal statute or regulation pursuant to a final decision or determination of an agency having the power to conduct the proceeding . . . *or after resolution of the proceeding by stipulation or agreement*, and where the violation resulting in the final decision or determination *would constitute an act described as professional misconduct or unprofessional conduct by the rules or regulations of the State Commissioner of Education or the State Board of Regents*" (18 NYCRR 515.7 [e] [emphases added]).

The consent order at the heart of this case is without doubt a "stipulation or agreement" resolving a proceeding alleging professional misconduct; thus, OMIG's decision to terminate petitioner physician's participation in the Medicaid program falls squarely within the agency's explicit powers. Notably,

OMIG is not required by any statute or regulation to conduct an independent investigation or develop additional information or defer to BPMC before making such a decision. Of course, OMIG may always take additional investigatory steps if, in its discretion, it deems them necessary to inform its decisionmaking. Likewise, the agency may always decide, in a particular case, not to remove a disciplined physician from the Medicaid program. Indeed, in the majority of cases resolved by BPMC consent orders, OMIG apparently does not exclude the physicians involved. But nothing in the law or regulations requires this forbearance.

## II.

The record includes a form—a "Consent Order Review Sheet"—completed by the OMIG auditor, a registered nurse with 41 years of experience, including extensive service on hospital audit committees for professional services and quality assurance. This review sheet includes, under the section captioned "Recommendation," a few handwritten, barely legible, crossed out and interlined notes. These notes appear merely to repeat that there were two charges of negligence and that petitioner physician was placed on probation for 36 months, the same information summarized in a previous section of the review sheet, captioned "Consent Order Information."

In this case there were indeed two serious charges of professional misconduct, involving the treatment of two elderly women, both of whom died soon after coming under petitioner physician's care. But the basis for the auditor's recommendation to terminate petitioner physician's participation in the Medicaid program, which was approved without comment by four additional agency reviewers, does not appear anywhere in the administrative record. Although OMIG is, as already discussed, authorized to remove a physician from the program solely on the basis of a BPMC consent order, its decision to do so is concededly discretionary. The agency therefore has an obligation to explain *why* in a particular case exclusion was thought to be warranted.

On this record, there is no telling. Did the auditor recommend termination because there were two charges of professional misconduct? because both patients died? because the patients were elderly and the Medicaid program serves a significant elderly population? for some other reason(s) evident in the charges, which were available to the auditor? We simply do not

know. In short, although OMIG is not required by law, and surely should not be commanded by the courts, to defer to BP-MC's judgments or undertake additional time- and resource-consuming investigations, here there is inadequate record support for the decision to exclude this particular sanctioned physician from the Medicaid program. As a result, OMIG's decision was arbitrary and capricious and an abuse of discretion.

### III.

Finally, another aspect of this case merits discussion. Petitioner physician settled with BPMC "in full satisfaction" of the charges of professional misconduct lodged against him. He complains that, as a result of OMIG's subsequent action to exclude him from the Medicaid program, he did not achieve the complete settlement that he bargained for, even though BPMC and OMIG are both "units" within DOH. But BPMC and OMIG have separate statutory authority and different purposes. When resolving charges of professional misconduct with BPMC, physicians and their attorneys should be mindful that a settlement with BPMC does not bind OMIG, as petitioner physician discovered in this case.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

SMITH, J. (concurring). The Board for Professional Medical Conduct (BPMC) found that petitioner had practiced medicine negligently on two occasions, but did not suspend him from practice, choosing instead to impose a three-year period of probation. The Office of the Medicaid Inspector General (OMIG), relying on nothing but BPMC's finding, prohibited petitioner from treating Medicaid patients—which, as a practical matter, makes it difficult if not impossible for petitioner to practice medicine. I agree with the majority that OMIG's determination was arbitrary and capricious, but would rest that conclusion on the broader ground adopted by the Appellate Division.

### I

BPMC is a unit within the Department of Health consisting of a majority of doctors and a minority of lay members (Public Health Law § 230 [1]). It is responsible for adjudicating professional misconduct complaints against doctors. A separate unit of the Department of Health, the Office of Professional Medical

Conduct (OPMC) is responsible for investigating and prosecuting such complaints. OPMC conducted an investigation of petitioner's treatment of two patients in 2006. The investigation led, in 2009, to a "Consent Agreement and Order" signed by petitioner, BPMC and OPMC, in which petitioner pleaded "no contest" to charges that his care and treatment of both patients "failed to meet accepted standards of care." The agreement includes a two-page "Statement of Charges," briefly describing the ways in which petitioner was said to have erred. Petitioner agreed to a 36-month period of probation, subject to 11 specific terms, among them that petitioner would "practice medicine only when monitored" by a doctor acceptable to OPMC, and that he would enroll in and complete a continuing education program.

After this agreement was signed, petitioner's case came to OMIG's attention. OMIG is also part of the Department of Health. It was created in 2006 to consolidate in a single office "Medicaid fraud detection, prevention and recovery functions" and to "streamline the state's process of detecting and combating Medicaid fraud and abuse" (Public Health Law § 30). The statutes governing OMIG suggest that its primary focus should be on fraudulent and other excessive Medicaid billing, but its mandate is not expressly restricted in that way. A regulatory definition of "abuse" includes "payments for services which fail to meet recognized standards for health care" (18 NYCRR 515.1 [b] [1]).

Under another regulation, when OMIG receives notice that BPMC or some other agency has found a person guilty of "professional misconduct or unprofessional conduct," OMIG "may immediately sanction the person" (18 NYCRR 515.7 [e] [regulation of Department of Social Services]; see Public Health Law § 31 [1] [transferring certain DSS duties to OMIG]). Possible sanctions include exclusion from the Medicaid program "for a reasonable time" (18 NYCRR 515.3 [a] [1]). An OMIG document in the record before us says that, when OMIG receives a consent order from OPMC, it "will obtain the full investigative file and consider the underlying facts to make an independent decision on whether exclusion is warranted," but that did not happen in petitioner's case. Rather, a registered nurse employed by OMIG as a "Health Surveyor" reviewed, as far as the record shows, only the Consent Agreement and Order, with its attachments. Having done so, the Health Surveyor concluded that petitioner's "conduct was so negligent that the OMIG

should . . . exclude him from participating as a provider in the Medicaid program," and OMIG adopted that recommendation. The Health Surveyor's reasons for concluding that the conduct was "so negligent" do not appear in the record.

It is undisputed that exclusion from the Medicaid program is a grave sanction for any doctor, even one who, like petitioner, primarily treats patients who are not Medicaid recipients (*see Matter of Mihailescu v Sheehan*, 25 Misc 3d 258, 261 [Sup Ct, NY County 2009] ["respondents do not deny petitioner's assertion that, under Medicaid regulations, her continuing exclusion from the roster of Medicaid providers effectively bars any governmentally licensed or operated facility from hiring her"]). Petitioner asserted below that, after being listed on the Medicaid website as an excluded physician, he was notified by a private insurer that it would exclude him as a qualified provider, and that he expected to receive similar notices from other insurers. He also alleged that "it will be difficult if not impossible for him to secure or renew privileges at any area hospitals in the future if he is excluded from Medicaid." OMIG does not specifically deny these assertions, though it points out that petitioner is not barred from treating non-Medicaid patients.

## II

Petitioner argues that what has happened here is essentially a second-guessing of BPMC's determination by OMIG. While BPMC, a board composed primarily of doctors and principally concerned with maintaining high standards of professional care, decided that petitioner should, subject to certain restrictions, be allowed to continue treating patients, OMIG decided, with no basis beyond the facts found by BPMC, that he could not treat Medicaid patients. I agree with petitioner that OMIG's action was arbitrary and capricious for this reason.

Where the only issue is the professional quality of care being rendered, and where OMIG has no information before it that BPMC did not have, OMIG should defer to BPMC's decision on whether a doctor may safely be allowed to furnish medical care. The majority of the lower courts that have considered this issue have so held (*see Mihailescu*, 25 Misc 3d at 265-267; *Matter of Pearl v Office of the Medicaid Inspector Gen.*, 2009 NY Slip Op 32492[U] [Sup Ct, Albany County 2009]; *Matter of Haluska v State of N.Y. Off. of State Medicaid Inspector Gen.*, Sup Ct, Chemung County, Apr. 7, 2010, O'Shea, J., index No. 2009-2774; *Matter of Napoli v Sheehan*, Sup Ct, Erie County, May 25, 2010,

Drury, J., index No. 2009-14524; *but see Matter of Halliday v State of N.Y. Off. of Medicaid Inspector Gen.*, Sup Ct, Albany County, July 2, 2010, Connolly, J., index No. 2575-10; *Matter of Blab v Sheehan*, Sup Ct, Albany County, Sept. 30, 2010, Sackett, J., index No. 4275-10).

I do not suggest that OMIG should be limited to examining cases of financial fraud and abuse, or that it has no role in considering whether a doctor's treatment of patients meets professional standards. If OMIG had acted against petitioner on the basis of its independent investigation, and had not relied entirely on facts that BPMC had already found, I might find this to be a different case. Nor do I suggest that OMIG need defer to BPMC where something other than the care and treatment of patients is at issue. I might also think this a different case if BPMC's discipline of petitioner were based on poor record-keeping. But it was in fact based exclusively on the quality of the care that petitioner gave his patients. In such a case, OMIG should not, in effect, review and reject BPMC's determination that petitioner is fit to be trusted with patient care.

Judges GRAFFEO, RIVERA and ABDUS-SALAAM concur with Judge READ; Judge SMITH concurs in result in an opinion in which Chief Judge LIPPMAN and Judge PIGOTT concur.

Order affirmed, with costs.