OPINION OF THE COURT
Lucy Billings, J.
Petitioner has been on parole since May 3, 2012, following his conviction January 22, 1982, and subsequent incarceration for kidnapping in the first degree. When he was convicted in 1982, kidnapping in the first degree was not classified as a sex offense. Even now, kidnapping in the first degree is classified as a sex offense only if the victim is under 17 years old, which petitioner’s victim was not. (Correction Law § 168-a [2] [a] [i]; People v Howard, 27 NY3d 337, 339-340 [2016]; People v Knox, 12 NY3d 60, 65 [2009].) As part of the conditions of his parole, however, respondent New York State Department of Corrections and Community Supervision (DOCCS) Division of Parole and Parole Officers in November 2013 assigned him to a unit for sex offenders and in February 2015 required him to participate in a sex offender treatment program. Petitioner seeks reassignment out of the sex offenders’ unit and removal of the condition that he participate in sex offender treatment, on the grounds that these conditions are arbitrary, not rationally based on the facts or law, and an abuse of discretion. (CPLR 7803 [3].)
I. Respondents’ Initiation of Sex Offender Treatment
The parties agree that petitioner was convicted for arranging and carrying out with two codefendants the kidnapping of a female victim and, only after he had left the premises in which she was detained, one of his codefendants raped her. Neverthe *510 less, respondents consider petitioner to have been a “bystander of rape.” (Verified petition, exhibit E; verified answer ¶ 14.) His Parole Officer respondent Hamilton referred petitioner to Shiloh Consulting, LLC, where he was admitted February 25, 2015, “to receive psychotherapy to explore the factors that had contributed to his conviction of kidnapping and being the bystander of rape.” (Verified petition, exhibit E.) On June 15, 2015, Shiloh Consulting discharged him due to an “inability to meet treatment goals.” (Id.) While this reason suggests that the psychotherapists failed in their objective, Shiloh Consulting commented on his discharge that he “continues to demonstrate his resistence in therapy from expressing, ‘A group of sex offenders can not help me.’ ” (Id.) Between February and June 2015, however, he attended the treatment readiness group sessions in which he was placed for eight weeks and biweekly individual therapy sessions.
Upon petitioner’s discharge from this sex offender treatment program, respondent Parole Officers fitted petitioner with a global positioning system (GPS) ankle monitor, due in part to his disinterested participation in the program, as well as previous failures to visit the parole office as required and violations of his curfew. Now that petitioner has worn the monitor over a year he also seeks that the monitor be removed or, at minimum, regularly adjusted to prevent injury to his ankle or alternative body part where the monitor is fitted.
II. Respondents’ Justification for Petitioner’s Continued Treatment and Monitor
DOCCS may designate petitioner “a discretionary sex offender because he kidnapped a woman who was later raped by his co-defendants” (verified answer f 18), based “not ... on convictions alone,” but also on other past behavior and current behavior as a parolee (verified petition, exhibit G), as long as the designation and associated conditions imposed on his parole are rationally related to his conduct and chances of recidivism. (Executive Law § 259-c [2]; 9 NYCRR 8003.3; Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d 147, 159 [1st Dept 2016]; Matter of Williams v New York State Div. of Parole, 71 AD3d 524, 525 [1st Dept 2010]; Matter of M.G. v Travis, 236 AD2d 163, 168-169 [1st Dept 1997]; Matter of George v New York State Dept. of Corr. and Community Supervision, 107 AD3d 1370, 1372-1373 [3d Dept 2013].) “Simply because a challenged act is discretionary does not mean it is unreviewable under CPLR 7803 (3) . . . .” (Matter of *511 Anonymous v Commissioner of Health, 21 AD3d 841, 843 [1st Dept 2005].)
A. Sex Offender Treatment
Petitioner’s only conduct to which respondents relate his required participation in sex offender treatment is his kidnapping of his victim, which “enabled his co-defendant to rape her.” (Verified answer ¶ 21.) Respondents do not dispute that petitioner was neither present nor nearby when his codefend-ant raped her. Respondents do not claim that petitioner knew his codefendant would rape his victim or knew facts that reasonably would have led petitioner to believe she would be raped. Nonetheless, his kidnapping did leave her entirely vulnerable to further victimization by his partner in their initial crime.
Yet respondents never explain why, if this conduct over 30 years before petitioner’s parole justified sex offender treatment as a condition of his parole, the treatment suddenly was warranted in February 2015, but not between his release in May 2012 and February 2015, almost three years later. Respondents do not cite to any conduct by petitioner during this period indicating his failure to take responsibility for his actions or his propensity to repeat his past offense or to commit a sex offense in the future.
During his parole, petitioner has maintained a mutually respectful, supportive, and harmonious marriage and both volunteer and compensated employment. Shortly after his discharge from Shiloh Consulting, he voluntarily enrolled in Queens Counseling for Change July 14, 2015. Respondents present its director Menzie’s unsworn correspondence dated May 16, 2016, to petitioner’s current Parole Officer who succeeded respondents Hamilton and Medina, recounting that petitioner attended four treatment sessions between July 23 and September 1, 2015, but then did not return until January 21, 2016. The program then conveyed to him the expectation that he was to attend weekly sessions. Although he attended only nine sessions between January 21 and May 16, 2016, approximately biweekly, the correspondence indicates no deficiency in his attendance or dissatisfaction with his participation. The program director comments positively regarding petitioner’s participation: “appropriate and cooperative. He has expressed remorse regarding the circumstances of his Instant Offense.”
In supplemental unsworn correspondence dated August 7, 2016, to petitioner’s Parole Officer, director Menzie elaborates:
*512 “Mr. Jenkins has verbalized a developed understanding of his responsibility for the actions that led to his treatment referral and supervision as a d[is]cretionary sex offender.
"... He has discussed . . . his responsibility for the outcome of what he set in motion and appears to have more empathy after his exposure to sessions. He acknowledges the trauma the victim has most likely had to deal with given his actions. . . . He has been cooperative with staff directives and appropriate in sessions . . . and has been more concise in demonstrating his openness and understanding of the topics of each session.”
Finally, Menzie comments that petitioner also acknowledges a past criminal history to which “he has indicated he has no desire to return.” Petitioner’s successful participation may be attributable to the program’s effort indicated by the May 2016 correspondence, but not reflected in Shiloh Consulting’s discharge summary, to explain why the high risk behavior involved in his kidnapping offense justifies a treatment program designed to avoid such behavior, despite the absence of a conviction for a sex offense.
B. GPS Monitor
Although respondents justify the GPS monitor on grounds other than petitioner’s discharge from the initial sex offender treatment program to which respondents referred petitioner, his senior Parole Officer respondent Medina attests that the need for the monitor was to be reevaluated after six months. Fourteen months after imposing the monitor, respondents have not shown that they have ever reevaluated the need for petitioner to wear the monitor.
Only petitioner recounts in a memorandum dated May 31, 2016, to one of his current Parole Officers, that petitioner met with them February 23, 2016, when they assured him that, if he refrained from taking his garbage downstairs in his building, causing the monitor to show he had left his floor, they would remove the monitor. His memorandum reminds them that he has not repeated the departures from his floor since then, yet the Parole Officers have not removed the monitor, indicated subsequently when or under what circumstances they would remove it, reevaluated the need for the monitor, or justified its continued use.
III. Curtailing Respondents’ Abuse of Their Discretion
 Regarding neither the sex offender treatment nor the GPS monitor have respondents articulated any course of *513 conduct petitioner must complete, attribute he must exhibit, goal he must reach, or even a maximum time he must endure these conditions to free himself from their imposition. Such discretion is unbridled. (See Matter of Koch v Sheehan, 21 NY3d 697, 703 [2013]; Anonymous v Commissioner of Health, 21 AD3d at 843-844.) He must complete a sex offender treatment program, but respondents do not specify what completion entails: any of the above or anything else. He must demonstrate, “to the satisfaction of his therapists” (supp aff of Lewis Squillacioti ¶ 4), that he has taken responsibility for the kidnapping that led to his victim’s rape and addressed the cause of his criminal conduct. Nevertheless, how he is to demonstrate that responsibility for and correction of past conduct, beyond serving his sentence, refraining from further criminal conduct, particularly related to sex offenses, and engaging in productive employment and family life, remains a mystery. Respondents have not suggested how petitioner must reform his conduct in any of these respects, other than to refrain from using marijuana.
Queens Counseling for Change director Menzie’s correspondence dated May 16, 2016, does convey that attendance “usually” is “for a minimum of 26 sessions”: the first time any “minimum” has been conveyed to petitioner. This correspondence also promises that, after “26 sessions of consistent attendance,” Queens Counseling for Change “looks at such issues as: time uninterrupted in the community, . . . employment involvement, insight developed by the individual into the offense, . . . to determine if further treatment is needed.” Menzie does not define “consistent attendance,” yet does not comment negatively on petitioner’s attendance approximately biweekly.
Petitioner previously attended Queens Counseling for Change with equivalent frequency between July and September 2015. Since respondents do not show that Queens Counseling for Change or DOCCS ever conveyed to petitioner that consistent attendance was required before he resumed attendance in January 2016, let alone what frequency was “consistent,” his four sessions between July and September 2015 count toward the 26 sessions.
Petitioner’s attendance at Shiloh Consulting was at least biweekly until his discharge. Petitioner estimates he attended 10 sessions. The discharge summary indicates his attendance was disinterested, but that program demonstrated little effort to gain his appreciation for the treatment offered: that it would, *514 for example, help him avoid behavior, albeit not a sex offense itself, that created a risk for such an offense to be committed. Consequently, respondents have not shown that any lack of meaningful attendance at this program, to which they referred petitioner, necessarily was attributable to him. Thus, while the record here does not disclose the precise number of sessions he attended at Shiloh Consulting, they, too, count toward the 26 sessions.
Based on the very facts respondents present, the court grants the petition to the extent of ordering the following relief. This relief is the minimum necessary to assure that the conditions imposed on petitioner are not arbitrary, but are reasonably related to his past conduct and his chances of recidivism (Williams v Department of Corr. & Community Supervision, 136 AD3d at 159; Williams v New York State Div. of Parole, 71 AD3d at 525; M.G. v Travis, 236 AD2d at 168-169; George v New York State Dept. of Corr. and Community Supervision, 107 AD3d at 1372-1373), and to prevent DOCCS’s and its parole officers’ abuse of their discretion. (Matter of 20 Fifth Ave., LLC v New York State Div. of Hous. & Community Renewal, 109 AD3d 159, 163 [1st Dept 2013]; Matter of Metropolitan Movers Assn., Inc. v Liu, 95 AD3d 596, 598 [1st Dept 2012]; Anonymous v Commissioner of Health, 21 AD3d at 843-844.) Although DOCCS’s determinations regarding conditions of parole are discretionary, the “agency . . . has an obligation to explain why in a particular case” the particular exercise of discretion “was thought to be warranted.” (Koch v Sheehan, 21 NY3d at 703.) Unbound by this constraint, and without the relief ordered below, DOCCS’s discretion remains unbridled and easily subject to abuse. (CPLR 7803 [3].)
First, DOCCS shall immediately either remove the GPS monitor from petitioner or, if DOCCS intends to continue the monitor, articulate in writing to petitioner and his attorney (a) DOCCS’s justification for continuing the monitor and (b) what actions petitioner must take for it to be removed. If DOCCS continues the monitor, upon petitioner’s submission to one of his Parole Officers of a physician’s report that petitioner has developed an abnormal medical condition in the area of the monitor, DOCCS shall justify in writing any continuation of the monitor. If the determination is to continue the monitor, DOCCS shall adjust the monitor’s location away from the area where petitioner is suffering the abnormal condition.
Second, upon petitioner’s attendance at 26 sessions of sex offender treatment, if DOCCS intends to continue this condi *515 tion or his assignment to a sex offender unit, DOCCS shall articulate in writing to petitioner and his attorney (a) DOCCS’s justification for the continuation and (b) what actions petitioner must take to complete the treatment program and be transferred from the unit. Application of the program’s criteria dictates a determination that no further sex offender treatment is needed. Petitioner has spent over four years uninterrupted in the community, consistently in employment training or employed. By expressing “his responsibility for the outcome of what he set in motion,” recognition of “the trauma the victim has most likely had to deal with given his actions,” and remorse for the consequences of his kidnapping offense, he has developed insight into his offense. Whatever DOCCS’s determination, its evaluation must find “sound basis in reason,” and actual “facts” to support its determination. (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; Metropolitan Movers Assn., Inc. v Liu, 95 AD3d at 598; see Matter of Lantry v State of New York, 6 NY3d 49, 55-56 [2005]; Goodwin v Perales, 88 NY2d 383, 392 [1996]; 20 Fifth Ave., LLC v New York State Div. of Hous. & Community Renewal, 109 AD3d at 163, 166; Matter of Langham Mansions, LLC v New York State Div. of Hous. & Community Renewal, 76 AD3d 855, 859 [1st Dept 2010].)
The conditions imposed on petitioner’s parole that has extended over four years following over 30 years of incarceration contrast starkly to the conditions imposed on petitioner’s codefendant who carried out the rape. According to petitioner, the codefendant’s incarceration extended little more than half of petitioner’s. Despite the codefendant’s rearrest for a subsequent crime, the codefendant was released from reincar-ceration and permitted to leave New York.
IV. Conclusion
Based on all the circumstances presented and the reasons explained above, the court grants the petition against respondent New York State Department of Corrections and Community Supervision Division of Parole to the extent of ordering the relief set forth above and otherwise denies the petition and dismisses the proceeding against this respondent. (CPLR 7803 [3]; 7806.) Since the parties do not dispute that respondents Hamilton and Medina are no longer petitioner’s Parole Offi *516 cers, and the petition seeks no retroactive relief, the court denies the petition and dismisses the proceeding against them as moot. (CPLR 7806; see e.g. Shearn v Durst, 90 AD3d 539, 540 [1st Dept 2011].)